Okay, do we have a counsel who are going to argue with us, visually and verbally? Can you confirm that? Hi, Judge. My name is Ashley Kapusa. I'm an Assistant State's Attorney. Okay. My name is Laurie Garrix. I represent the appellant Robert Roy. Okay, you are in the First District Appellate Court, Second Division. In the case 20-21 ILAP First, 1-9-1-0-9-5, People v. Robert White. And you have three judges before you this morning. Myself, Terry Lavin, Justice Aurelia Puchinski, and Justice Cynthia Cobbs. And if you're not familiar with the way we've been doing it, I know different divisions handle the Zoom stuff differently. We've decided to press our mute buttons for 10 minutes and allow uninterrupted argument by each side. And then after 10 minutes, you're fair game for questions from us. But we'll do our best to press the mute button for 10 minutes. And the appellant should save three to five minutes for rebuttal. With that in mind, we will hear from the appellant. Thank you, Your Honor. Good morning. May it please the court. My name is Laurie Garrix. I represent the appellant Robert White in this case, and I would like to reserve five minutes for rebuttal. Okay. We're here today because Officer Forbes, a police officer with the Chicago Police Department, arrested Robert White for after finding a gun in a black Louis Vuitton bag during an unlawful search and seizure of Mr. White whenever he was at his cousin's house in the Englewood neighborhood of Chicago on a spring night in 2018. By his own testimony, Officer Forbes decided to detain Mr. White the moment that he saw Mr. White walk away from the other group of individuals at the area the officers were approaching. Mr. White didn't flee at the time. That's what Officer Forbes testified to the trial court. Mr. White wasn't holding any dice or money at the time, and there was nothing about the black Louis Vuitton bag that would show that there was anything illegal inside. And there was nothing about Mr. White's actions to shift the bag from his side to his front that would have led to any inference of illegal activity. Based on this evidence, Officer Forbes did not have reasonable or articulable suspicion to stop or to search Mr. White, but still the trial court denied Mr. White's motion to cross arrest and suppress evidence. Based on the trial court's error, Mr. White asked this court to reverse his conviction, as the state will be unable to meet its burden without the gun. In alternative, Mr. White asked that this court vacate his conviction based on the trial court's error and remand the case for further proceedings. First, Officer Forbes stopped and searched Mr. White without reasonable or articulable suspicion. While the state now tries to argue for the first time on appeal that this was a search incident to arrest, as I'll explain in more detail, that was not the state's theory at trial, and the evidence was never developed or argued that way. Second, even if Officer Forbes had reasonable or articulable suspicion to stop Mr. White, his probing of the black Louis Vuitton bag went well beyond the permissible bounds of a Terry search. And finally, the state's evidence, even if the gun was not suppressed, was not sufficient to prove Mr. Because the state failed to prove that Mr. White knew that the gun was in the Louis Vuitton bag. The moment that Officer White or Officer Forbes saw Mr. White, he decided that he was going to stop and search him. Officer Forbes testified that he was in the passenger seat of a vehicle whenever it approached the group the evening of the arrest. And based on the trial court's own findings, Officer Forbes was unable to see the details of what was happening on the street as he approached, it would be nonsense that he could. But Officer Forbes didn't like the fact that Mr. White turned and walked away from the rest of the crowd. When the officers approached, and so he decided at that moment that he was going to do a firearm recovery. That was his testimony. But simply walking away is not sufficient to meet the standard required to support a detention and search of Mr. White, reasonable, articulable suspicion. The trial court's decision to grant or deny a motion to dismiss is reviewed de novo. Officer Forbes was required to have reasonable articulable suspicion to stop and detain Mr. White, and then required to fear for safety in order to justify a Terry search of Mr. White. In this case, the trial court found that the search was justified because Mr. White was around a dice game, there was gambling going on in the area, because Mr. White shifted a bag as he walked, and because he walked away from the officers as the officers approach. These facts don't support the conclusion that the officer Forbes had reasonable articulable suspicion that Mr. White had committed or was committing a crime. And these are the findings that the court made to support its decision to deny the motion to suppress. Additionally, the trial court improperly used the fact that the finding that Mr. White didn't obey the officers orders whenever he was told to walk away. Or whenever he was told to stop as he was walking away. Simply walking away is a right that every person has, even in a high crime neighborhood. The Supreme Court addressed that in Florida B. Royer, R.O.Y.E.R. 460 U.S. 491. Further, even if we look beyond the trial court's findings and look at the evidence that the state presented as a whole, there was not enough evidence to show that officer Forbes had reasonable articulable suspicion to stop Mr. White. The state argues that it presented evidence that Mr. White walked away from a dice game that was happening, shifted his bag, and had a panicked expression on his face. And this was sufficient to prove that officer Forbes had a reasonable articulable suspicion to stop and search Mr. White. But as I mentioned, simply walking away from an officer is a protected right that everyone has, even in a high crime neighborhood. And although the trial court didn't directly address officer Forbes' testimony that he saw a panicked expression on officer White's, or on Mr. White's face, we can look at the other findings of the trial court to determine that the court would have found that testimony nonsense. The court said that it was nonsense that the officers could see alcohol in the cups as they were approaching from the vehicle. In the same way, it was nonsense that officer Forbes could see a panicked expression on Mr. White's face from the passenger seat of a vehicle in a dimly lit area from a distance away. Taken together, finally, shifting a bag from Mr. White's side to his front as he was walking is a completely natural movement. Mr. White didn't throw the bag, he didn't put it under his shirt, he didn't put it in his pants, he simply shifted it as he was walking. That's a natural movement that people make every day and there's nothing inherently suspicious in that. And taking these together, they do not rise to the level of reasonable articulable suspicion to stop Mr. White. And even if officer Forbes did have suspicion to stop Mr. White, he had no reason to fear for his safety. There was nothing about the black Louis Vuitton bag that would indicate that there was any type of weapon inside. It was a hard leather bag, a shoulder bag. There was nothing, no gun protruding from it. It was not the shape of a weapon. There was absolutely nothing that would inherently say there's something dangerous in this bag. And that's what's required for officer Forbes to conduct the Terry search of Mr. White, even if he had suspicion to detain him. Finally, even if a Terry search was justified, officer Forbes was required to stop when he found no weapons in Mr. White's waistband. Instead, he went a step further and searched a bag that was near Mr. White. And he especially exceeded the bounds of the Terry search when, as officer Forbes testified, he felt the bag. He manipulated it to determine that there was a gun inside. That is far beyond the bounds of any permissible Terry search. The way that the state deals with all of this now is to argue for the first time on appeal that this was a search incident to arrest. And the state recognizes in its brief that this was not what was argued below, that the state did not assert this theory at trial. It was not developed in evidence. And it makes sense that this theory wasn't advanced at trial because it's completely unsupported by any testimony before the trial court. But setting aside the state's forfeiture to address the merits of this new argument, it makes sense that they wouldn't try to go down this road because the argument crumbles as soon as we look at the trial court's actual findings. The trial court found that any individual around the dice game could be arrested. And that's simply incorrect as a matter of law. If we look at the language of the trial court's findings on page 71 of the supplemental record, the trial court found that there was gambling going on.  And that's simply incorrect. Gambling requires that an individual knowingly be participating in the game of chance. And here we have zero testimony that Mr. White had dice in his hand, that he was exchanging money, that there was any active participation on Mr. White's part. The most that the state can point to is a sentence of Officer Forbes after he's pressed a few times on this issue when he's asked, did you see Robert White actually engage in dice rolling? He says, yeah, there was a game going on and he was engaged in it. Yes. There's nothing from this to show that Mr. White was actually gambling. And so there was nothing in the record that would show that Mr. White was the one actually gambling. Instead, the court simply found an officer's testimony. Officer Forbes testimony always supports that at most there was a dice game going on. If we look at Officer Forbes testimony, what it actually shows us is that he was that Officer Forbes saw Mr. White walking away from the game. He wasn't engaged in the dice game. He was walking away. That's what Officer Forbes says. It made him suspicious and to follow him. And so it's impossible that he was actively participating in the game, as would be required to arrest Mr. White. Instead, he was trying to remove himself from that area. And it's important to recognize that the state now is attempting to capitalize on this mere on Mr. White's mere presence in the area where a dice game may have been going on and try to is trying to advance a theory of guilt by association to allow this pretext to deal with the problems that they face and the fact that Officer Forbes did not have any reasonable articulable suspicion to stop Mr. White. The search was well beyond a Terry stop, even if he did. But still, the state is now trying to save its argument with these new with these new theories. As we saw in Yabarra, Y-B-A-R-R-A-B, Illinois, the mere proximity to persons who are suspected of criminal activity and not constitute probable cause. And that's what we have here at most. But Mr. White was in the mere proximity of a dice game. That is not enough to justify a search or an arrest of him. And in fact, Officer Forbes never testified that he in any way was going to arrest anyone around the dice game. Officer Forbes didn't even know what happened to the rest of the individuals that actually were engaged in the dice game because he was so focused on performing a firearm recovery with Mr. White without any reasonable articulable suspicion. And that search and detention of Mr. White was unreasonable under the Fourth Amendment. As a result, the trial court should have granted Mr. White's motion to suppress evidence and the gun should have been suppressed. For these reasons, the trial court erred in denying Mr. White's motion. And Mr. White now asked that this court reverse conviction as the state will be unable to sustain the the required standard without the gun. And in the alternative, Mr. White asked the court to vacate his conviction and remand for further proceedings. And as a final point, the state's evidence presented to the trial court, even with the gun, was insufficient to prove that Mr. White was guilty beyond a reasonable doubt. The trial court used an inference based on the shifting of the bag to show that Mr. White knew that there was a weapon in the bag. As I discussed, Mr. White did not throw the bag. He didn't hide the bag. He just shifted it in a natural movement. This is an unreasonable inference for the trial court to make. And without this inference, the state failed to prove an essential element of a lawful use of a weapon by felon knowledge. Based on the record, Mr. White's conviction cannot stand. And he asked that this court reverse it. I would be happy to answer any questions. Okay. I just have a little bit here. It seems to me that you want to break things into pieces and look at things as just like one frame at a time when, in fact, there is a series of actions that have constituted the officer's decision making here. I mean, cops have to, cops observe people try to do things to secrete guns or act in ways to suggest to the police that they have a gun. This kind of stuff happens every day, unfortunately. Whether it's in Englewood or, you know, in the Beverly neighborhood. But what the police officer observed here was illegal activity. And he observed the defendant walking away. And he observed him with a look on his face that he thought was suspicious. And fourth, and perhaps most significantly, he saw him do something with that bag. Okay. And he was in possession of this bag. And he was acting in the police officer's judgment in a way that suggested to the officer that there's possibility that he would be armed. That's the, you know, the series of events that the police officer testified to that the trial court relied upon to justify the Terry stop and the pat down which included, since it was an effect in his immediate possession. The pat down of the defendant and of the bag. Your Honor, yes, we recognize that there was that officer Forbes testified to a number of events that he says led to his detention and search of Mr. White, but an initial issue is that officer Forbes also testified that the moment that he pulled up in the car and saw Mr. He was going to do a firearm recovery and so prior to any of the rest of the incident, the cascade of events as soon as he pulled up, he had already made that determination. But even if we look at the totality of those circumstances, none of them rise to the level that a reasonable officer would think that that there is something illegal in the bag. As your honor mentioned, it was the suspicion. And when he affected the Terry step and the release. He was proved correct. So you want to say that it's all speculation. Well, it turned out to be pretty good speculation on this part then. That's true, Your Honor, but that's not what that's not the standard to look at any situations just because there was a gun there does not justify the search on the front end. And this was a black Louis Vuitton bag that was a hard leather. It was a square, there was nothing about it that inherently said that there was a gun there, just because officer Forbes was right doesn't mean that the search was justified in its inception and that's what we're looking at the original moment, it is easy and it's easy for the state to say now, yes of course there was a gun, so he was right. But that's a problem is we need to look at what officer Forbes testified that he saw and he knew at the time he decided to detain and search Mr. And what he testified he saw at that point was a black leather bag that was simply shifted from the sides to the front. There's nothing inherently suspicious about shipping a bag as you're walking away, or deciding to walk away from officers. The fact that there was a gun in there eventually does not make it on the front end suspicious this is a Louis Vuitton bag it's it, there's not a duffel bag that there's something that's viewed sagging in the bottom of it it's not shaped in the size of a weapon, it's not even to see something bulging protruding. It's a hard leather bag that was square, where, where officer Forbes did not see anything about the bag inside and so simply seeing someone with a bag, who shifts it slightly is not sufficient to justify reasonable articulable suspicion, and to meet that standard. Otherwise we will have officers able to justify a search, based on any small movement no matter how natural, and the Fourth Amendment just cannot go. That will eviscerate protections under the Fourth Amendment. If the facts were as you just recited them. I would be persuaded. But that's not the first thing that happened. The first thing that happened was the officers are in their car in a neighborhood that they frequently are patrolling, and they see, they have a Yes, yes, Your Honor, they can they can stop and they did and that was justified. And then, not only did they stop intending simply to break up the gambling game. Defendant proceeds to travel up the stairs and is asked to stop and does not, and then does. There are a lot of facts, I'm perceiving that are missing in your recitation of the facts, which is why I'm having a little trouble following this. Your Honor, I think one of the very important facts there is, is something that you mentioned and the fact that the officers had every right to stop, they were going to have a positive community interaction to break up the game. And all that Mr. White did was walk away and go up the stairs towards the house. Well, not all that he did. According to Officer Forbes, whom the trial court believed he was asked to stop. He did not stop. He continued to go. This is testimony believed by the trial judge. He did not stop. He continued to travel upward and then to ship the bag and to appear to the officer as though to be, you know, appalled or stunned by the stop. We cannot dismiss the totality of all of the circumstances in this series of events. Yes, Your Honor, but the totality of the situation here does not rise to the level of what we see in cases where such a stop and search is justified. If there was, if Mr. White had fled, then I would agree with you. And that that would, the fleeing plus the look of panic, plus throwing a bag, that there would be a totality that rises to that level. But here we have Officer Forbes also testifying that there was no flight. He specifically said Mr. White never ran. He didn't flee down an alley. He didn't walk quickly up the stairs. He didn't, he made no fleeing effort. He simply walked away. And yes, he did testify that he did, that Mr. White continued to walk when he was asked to stop. But that's Mr. White's right. He is not required if there is not a reason. No, no, no, no, no, no, no, no. When an officer of the law says to you, stop, you do not then have the right to continue to walk away. No, no. Your Honor, I would at least say that then that is when the detention stopped or started. Right. And so that I believe that the better point for me to make there is that as soon as he is, as soon as Mr. White perceived that he is required to stop, there's a detention under the Fourth Amendment. And so there would have to be reasonable, articulable suspicion prior to that to justify that detention. And so my problem is using that as a factor in the justification for the stop because you are completely correct that once an officer can require an individual to stop, but that is under the Fourth Amendment when a detention would stop when a seizure has been undertaken. And so there needs to be reasonable, articulable suspicion prior to that seizure to justify it. Otherwise, the fruits of any seizure are then suppressed. And that's the problem that we have here is that that fact should not not be used to justify Mr. Fourth Stop of Mr. White, Officer Fourth Stop of Mr. White. Mr. Officer testified in the court believed on page 60 of the record supplement. Did you see Robert White actually engaged in dice rolling. He was Yeah, there was a game going on and he was engaged in it committed a crime engaged in a criminal act. At that point, the officer had the right to not only stop the guy but arrest him as he's pursuing the guy on foot following walking not running. He says to the guy, stop, which was his right because he had just seen him committing a crime. And the guy did not the defendant did not stop. So if you start at the right point in this series of events, you have to start at the point where the officer saw the defendant engaged in a crime a criminal activity, and that changes your whole analysis. That means that the officer not only have the right to stop the guy from the criminal activity, but to follow him and tell him to stop. And once the guy, the defendant shifted the bag to his front, the officer could reasonably believe he was going to reach into it for whatever was in there, maybe to dispose of the cash from the dice game, maybe to dispose of the dice, maybe to reach in for a socks, maybe to reach in for a gun, the officer doesn't know but now he can't see the bag. He knows the bag is in front of the defendant. And that is reason to believe that the officer could believe that he was in danger. I think that that changes your whole analysis. The slight distinction that I will make from from that is the fact that the yes officer for testified to this general statement that there that Mr. White was engaged in it, we don't have any facts to show what that means, or that there was means in a dice game. Based on the trial court findings. He didn't say he was watching the dice game was walking by it, or he was cheering on people who were playing engaged, that means to me actively involved in the dice game. What the trial court found related to that testimony is that there was a game going on, and that that any individual in that area, as a result, would have been arrested based on that game going on. And that could be arrested. That the problem with that just with that just this vision of the trial court is that simply being in the area and your presence where a game is being played does not mean that that individual could be arrested. He testified. Yes, Your Honor, the trial court's finding was that there was gambling going on, rather than Mr right was actively, actively participating in the, in the gambling and also, I will just point out that officer Forbes did testify that he had made the decision and was He observed in an almost side manner that there was a dice game and then no officers followed up with anyone that was actually actively gambling in the dice game, it's simply that there was a game going on. And if we look at officer Forbes testimony that Mr white was walking away from the game. It's nonsensical that the that officer or that Mr white was throwing dice or passing money, while he was also walking away from the game so officer Forbes testimony also shows us that it was only Mr White's presence that equals can be his thought that Mr right was engaged in the game, rather than Mr white knowingly actively participating in the game, throwing dice, passing money, doing any actual participation in the game instead, he was there and decided to walk away. And that is what officer Forbes you to justify the remainder of the detention. Okay, thank you. Let's hear from the Eppley, Miss Cruz. May it please the court I'm assistant state's attorney Ashley Kuza on behalf of the people of the state of Illinois. This case involves a lawful search incident to defendants arrest. As you know, an officer may arrest an individual without violating the Fourth Amendment. If the officer has probable cause to believe that the person has committed a crime in his presence. And once there's probable cause to arrest a search of the defendants person is entirely proper as a search incident to his arrest gambling is a class a misdemeanor offense in Illinois. So as soon as officer Forbes saw defendant gambling. He had probable cause to arrest defendant, which gave him the right to conduct a custodial search of defendants person. Now defendant argues that there was no evidence that defendant was actually engaged in gambling, but as justices Cobbs and Pachinksi pointed out, officer. So Forbes saw defendant participating in a dice game on the sidewalk with three other individuals. He also saw money on the ground by the game. And when asked if defendant was quote actually engaged in the dice rolling the officer said, quote, he was. Yeah, there was a game going on and he was engaged in it. Yes, the trial court found officer Forbes to be credible and that his testimony established that he can the offensive gambling in his presence. Defendant also argues that this wasn't a search incident to arrest because the trial court didn't make this express finding or because the state didn't articulate this argument well at the trial level. Well, as far as the record squarely refutes this claim in its ruling on the motion. And then again at the conclusion of the trial. The trial court expressly found that officer Forbes testimony established that defendant was engaged in the criminal act of gambling. The trial court then explained that the search and seizure was proper because the officer had probable cause to arrest defendant for gambling. In addition, the legal question before this court is whether the suppression was proper and that subject to de novo review. So that means that this court can affirm on any basis in the record. So even assuming just for argument's sake that the trial court didn't find that defendant was gambling or that this search was lawful as incident to defendants arrest. This court can still uphold the denial of the motion, because it's supported by evidence in the record. And instead of address. This is a search incident to defendants arrest defendant argues that this wasn't unlawful Terry stop, but Terry allows an officer to stop someone without probable cause, if the officer has reasonable articulable suspicion. That the person is committed or is about to commit a crime. So Terry does not apply to cases like this where there is probable cause because the officer saw defendant commit an overt criminal act. But even assuming just for argument's sake that Terry was applicable here defendants for and make claim would still fail. The moment that the officer arrived, there was criminal activity afoot. The gambling. So, even from the inception of this encounter defendant cannot show that he was doing nothing unusual to justify the intrusion. And then, as soon as defendant looked in the officer's direction. Freshen he shifted his bag from his side of his body to the front of his body and then turned around so that his body was concealing the bag from the officer's view. Defendant was then the only person to break away from the group and begin walking away. It was at that point that the officer subjectively believed based on his experience as a gang enforcement officer and the seventh district. He also testified he had extensive experience with firearm related offenses. That defendant was concealing a firearm and based on the totality of the circumstances. The officer's belief was in fact objectively reasonable. Now, even though these facts just standing alone demonstrate that the search and seizure was proper. There was more because As justice cops pointed out defendant ignored the officers lawful commands to stop which gave rise to probable cause to arrest defendant for yet another offense obstructing a peace officer. So we have defendant committing not one but two misdemeanor offenses in the officer's presence and then making multiple gestures that suggested he was concealing a weapon. This far exceeds the factual support required for a Terry stop and frisk. I also want to point out the defendant here is requesting improper relief. He's asking this court to reverse his conviction outright arguing that the state would be unable to prove defending guilty without the suppressed evidence. Now, this is important because it directly contravenes Illinois Supreme Court decisions and Drake Olivera Lopez and the United States Supreme Court decision in Lockhart versus Nelson holding that reviewing courts must consider All of the evidence, including improperly admitted evidence to determine whether a case should be reversed outright or remanded for retrial. And as the United States Supreme Court explained in Lockhart remand in these scenarios simply recreates the situation that would have been obtained if the trial court had excluded the improperly admitted evidence at trial. So, in other words, it affords the defendant an opportunity to tear a free or excuse me a fair re adjudication free of any error. On the other hand, outright reversal and situations of trial error is the functional equivalent of a pre trial dismissal on the merits, which irrigates the people's function as the executive to determine whether to continue with prosecution absent certain evidence. Now the Supreme Court revisited this issue and it's 2019 Drake decision precisely because of the pattern of published cases like those that are cited by defendant that failed to adhere to Lockhart and Olivera. So even though the gun was properly admitted into evidence in this case, I would still urge this court to take the opportunity and it's written decision expressly reject defendants requested relief is improper under the Drake Olivera Lopez and Lockhart line of authority. Now, with respect to the second argument, the evidence to do set trial overwhelmingly proved that defendant knowingly possessed a firearm. In fact, defendants reasonable doubt argument is specious right off the bat because he's asking this court to substitute its judgment for that of the finder of fact on issues regarding knowledge possession and credibility of the witnesses which, as you know, are all questions to be resolved by the trial court whose findings are given in great deference on review. Here, defendant was not only in actual possession of the firearm that he wore in a bag across his body but his attempts to conceal the bag from the officer's view demonstrated that he knew that the gun was in the bag. In fact, defendant doesn't even argue that the officer's testimony failed to establish that he knowingly possessed the weapon. Instead, he focuses on his own testimony arguing it was more credible than the officers and again that type of analysis is not permitted on review. But even if it was, the record still supports the trial court's decision to reject defendant's testimony as incredible. Defendant contradicted himself on the stand regarding whether he was on the porch or on the sidewalk, whether or not he was playing dice when the officers arrived. Defendant also claimed that he didn't know the firearm was in the bag and that the bag was quote like not heavy at all, but the trial court observed the size of the firearm and its extended magazine in open court and was in the best position to determine whether that testimony was credible. So because it was reasonable based on the record for the trial court to accept officer boards testimony and reject the defendants, this court should not substitute its own judgment for the trier of fact. Does this court have any questions? None from me. None from me. None from me. You've rendered us speechless. So let's hear a rebuttal. Thank you, Your Honor. Just briefly, a couple points to address. I'll just reiterate again, the state has argued that the search was instant to arrest, which occurs nowhere in the record below aside from a portion of the trial court's findings, recognizing that this court of course can affirm on any basis. Mr. White was not in a position to address that argument in the court below because it was never addressed by the people, a point that the state's brief does concede. Because this was not a theory in the court below it. It does make sense that this date would try to save their case now with this guilty by association near presence in the ability to perform any search instant to arrest, but that does not mean that mere presence at the area was sufficient for the office for as I discussed in my opening argument, there is no testimony that Mr. White had dice had money at anything on him, Mr. White, or Mr. Officer Forbes ever observed Mr. White with any money, any dice or anything related to the game. Instead, we saw the officer simply saw Mr. White walk away. And the state. I'm in bed. He that officer Forbes saw Mr right break away from the crowd he was the only one to break away from the crowd, but officer Forbes song testified that Mr. White never fled. He didn't make any kind of fleeing type of motion, he simply walked towards the house, he was at his cousin's house, and he walked towards it. There was no attempt to evade the police officer he continued to walk. But he did not not try to run down an alley didn't try to throw his bag didn't try to hide his bag aside from a slight movement. That is completely natural, when, when walking. And so, this, the states of the states attempt to now characterize this as a guilt by association allowing officer Forbes to arrest Mr. White is not supported by the law because there was not an actual participation on Mr. It's part in the game. I will also just address briefly the, the point, the state's point on the request to reverse Mr. White's conviction outright. There is a case law in the state which supports outright reversal where the state will be completely unable to prove its case with this without this press evidence that is that is especially the case here those cases do discuss that it's a unique circumstance never suppressed evidence would get absolutely impossible for this state to prove improve their case, and that is the case here because if there was not the gun, there would be no possibility of conviction for the unlawful possession of a weapon by a felon which is Mr. White's chart. Based on based on the evidence and the trial courts actual findings. That is why Mr. White is asking that this court reverses conviction or an alternative if the court does find that that is not proper relief to reverse the to remain the proceedings to the trial court to address the suppression of evidence. Okay. I'd like to thank the parties for your arguments and briefs, both very professionally done and Missouri to you in particular thank you for volunteering to represent this client pro bono that was a very professional commitment on your part, and the court really appreciates that. Okay, let's spread it around a little bit. Okay. Again, that's dictum. I'm hearing from you. We will consider the briefs and the argument and come out with an order and opinion in due course. Thank you very much. We are adjourned.